UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DAVID S. STEFFEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> ) | Case No. EDCV 07-1032 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") noted that plaintiff filed prior applications for SSI benefits, the most recent of which was denied in a final hearing decision dated May 20, 2004.[1] [See Administrative Record

---

[1] The ALJ permissibly concluded that the prior, final determination of nondisability in May 2004 is entitled to res judicata effect, see Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988), and created a presumption that plaintiff was not disabled after that date. See Schneider v. Commissioner

("AR") 206]. Applying a presumption of continuing nondisability, the ALJ found that the record established "changed circumstances" only in that the severity of plaintiff's impairments had decreased. [See AR 206-207]. The ALJ found that during the period beginning on December 21, 2004, the date plaintiff filed his current SSI application, plaintiff had medically determinable impairments consisting of abdominal pain, diarrhea, hepatitis C, and major depression.[2] [AR 209]. The ALJ further found that those impairments were not severe, either singly or in combination. [AR 209-214]. Accordingly, the ALJ concluded that plaintiff had not been disabled at any time since the date his current SSI application was filed. [See JS 2; AR 215].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

---

of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 567 (9th Cir. 1983). The presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status has resulted in an inadequate record. See Lester v. Chater, 81 F.3d 821, 827-828 (9th Cir. 1995); Chavez, 844 F.2d at 693.

[2]   SSI benefits are payable no earlier than the month following the month in which the application was filed. See 20 C.F.R. §§ 416.330, 416.335.

**Discussion**

**Treating source report**

Plaintiff contends that the ALJ inadequately considered the findings and medication side effects noted in a treating source report from Ellison Chang, M.D. [See JS 3-10].

Dr. Chang conducted a "medication evaluation" on January 7, 2007. [AR 705]. His handwritten notes indicate that plaintiff displayed a more positive attitude and less irritability since the previous month's visit. On the pre-printed checklist on the examination report, Dr. Chang circled responses indicating that plaintiff (1) denied auditory and visual hallucinations, paranoia, delusions, racing thoughts, impulsiveness, suicidal ideation, and substance abuse; (2) reported situational anxiety that was severe, some dysphoric mood, moderately low energy level, and low concentration, with a hand-written comment, "distractible"; (3) had "OK" sleep of 6 to 7 hours a night without excessive daytime sleepiness; (4) had "OK" cognitive function; and (5) exhibited "good" medication compliance with reported side effects of "dizzy" and "dry mouth," but no headaches. In the mental status examination portion of the form, Dr. Chang indicated that plaintiff had a clean appearance. His movement was normal. His speech tone and rate of speech were normal, and his speech was fluent and linear. He was continued on the antidepressant Cymbalta and advised to return for follow up in 8 weeks. [AR 705].

The ALJ discussed plaintiff's mental health treatment records, including those from Dr. Chang. The ALJ noted that Dr. Chang saw plaintiff in December 2006 "and reported no abnormalities during her [sic] mental status examination. In January 2007, the claimant reported he was irritable, but he had a positive attitude, and the mental status examination was normal." [AR 212 (citing AR 706-707)].

Plaintiff contends that the ALJ's assessment was "haphazard" and "unfair" because he "provided no reasons for rejection of the portions of Dr. Chang's report that are obvious indications all is not 'well' with Plaintiff's mental state." [JS 4]. Plaintiff also contends that the ALJ failed adequately to consider the medication side effects plaintiff described to Dr. Chang.

The standard for determining whether a mental impairment is severe is not whether "all is well" with a claimant's mental state but whether the claimant has a medically determinable impairment or combination of impairments that more than minimally affects the claimant's mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006). Basic work

3

activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." Social Security Ruling ("SSR") 96-3p, at *3.

Under the well-established "treating physician rule," the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Dr. Chang's medical evaluation notes do not include any diagnosis of a medically determinable impairment, nor do they include any opinion as to plaintiff's work-related mental functional abilities. Thus, that evidence has very limited probative value with respect to the threshold issue of severity. The ALJ's description of the January 2007 progress note permissibly emphasizes two findings that Dr. Chang made a point of noting, plaintiff's more positive mood and decreased irritability. [See AR 212, 705]. Dr. Chang indicated that plaintiff was doing "OK" overall, with mostly normal findings and a few subjective symptoms, including the side medication effects of dizziness and dry mouth. Only one subjective symptom noted by Dr. Chang (situational anxiety) was rated "severe" in January 2007. [AR 705]. During the previous month's medication check, Dr. Chang rated plaintiff's anxiety as slight. [AR 706].

The ALJ's finding that plaintiff had no severe mental impairment was based on his evaluation of the treating source reports and on the reports of the Commissioner's examining and non-examining doctors. The ALJ relied, in part, on the report of the Commissioner's examining psychologist, Dr. Cash, who concluded that plaintiff's psychological test results revealed evidence of malingering, dissimulation, or

1  fabrication, and who opined that plaintiff had mild or no impairment in his mental functional abilities. [See
2  AR 684-688]. Plaintiff has not shown how any of the examination findings, subjective symptoms, or
3  medication side effects noted in Dr. Chang's January 2007 report undermines the ALJ's finding that plaintiff
4  did not have a severe mental impairment and had not shown "changed circumstances" that rebutted the
5  presumption that he remained able to work. Accordingly, plaintiff's contention is without merit.

**Licensed clinical social worker's report**

Plaintiff contends that the ALJ did not provide valid reasons for rejecting the opinion of John Wells, a licensed clinical social worker ("LCSW") who evaluated plaintiff at Riverside County Department of Mental Health ("County Mental Health").

Mr. Wells conducted an initial assessment of plaintiff on August 4, 2006 at County Mental Health, where plaintiff sought treatment for symptoms of depression. [AR 678-679, 707-708; see also AR 663-677, 680-683]. Mr. Wells conducted a mental status examination and made abnormal findings including angry mood, blunted and depressed affect, impaired concentration, poor judgment and insight, minimal speech, and disorganized, ruminating thoughts. [AR 708]. He gave plaintiff a diagnosis of depressive disorder, severe, without psychosis, and a Global Assessment of Function score of 49 (current) and 51 (past year).[3] Mr. Wells also completed a "check-the-box" form rating plaintiff's mental work-related abilities. He rated

---

[3] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. Q GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. A score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. 1994)(revised 2002); see also Morgan, 169 F.3d at 598 n.1("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient."); Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996)(discussing the significance of GAF scores), rev'd on other grounds,143 F.3d 1240, 1245 (9th Cir. 1998); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)(describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

plaintiff as having "moderate" or "marked" limitations in a number of mental functional abilities. [AR 678-679].

Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for a finding of severity or disability. See 20 C.F.R. §§ 404.1508, 404.1513(a), 416.980, 416.913(a). Unlike a licensed physician or psychologist, an LCSW is not an "acceptable medical source" whose findings can establish the existence of a medically determinable impairment. An LCSW falls into the category of "other sources." See 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ "may also use" information in the record from "other sources" "to show the severity" (but not the existence) of a claimant's medically determinable impairments and how those impairments affect the ability to work 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ, however, is not required to give that information the same weight as information from an acceptable medical source. See Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (explaining that opinions from "other sources" may be given less weight than those from "acceptable medical sources" under the governing regulations), cert. denied, 519 U.S. 881 (1996); see also SSR 06-03p.

The ALJ permissibly rejected Mr. Wells's opinion because, unlike the physicians and psychologists whose reports the ALJ also considered, Mr. Wells is not an "acceptable medical source." He noted that the medical expert, Dr. Glassmire, testified the restrictions indicated by Mr. Wells were not consistent with other examination reports in the record. [AR 211, 747]. Additionally, the ALJ noted that Mr. Wells prepared his assessment after seeing plaintiff only once, on intake at County Mental Health in August 2006, and there is no evidence that he saw plaintiff again. The ALJ pointed out that there is no evidence that plaintiff was receiving psychiatric treatment before that date, nor has plaintiff "maintained regular attendance at the [County Mental Health] clinic." [AR 214]. Therefore, the factors that weigh in favor of giving deference to a treating source opinion are largely absent. See 20 C.F.R. §§ 404.1527(d), 416.927(d).[4]

---

[4] Plaintiff contends that the ALJ "misrepresented the record" by rejecting Mr. Wells's opinion in part because "there is no evidence Mr. Wells conducted a mental status examination of the claimant." [AR 214]. This misstatement appears to be attributable to the fact that plaintiff's medical records from County Mental Health for the period August 4, 2006 through October 11, 2006—which were faxed to the ALJ by plaintiff's counsel—contain only the first page of Mr. Wells's intake assessment. [AR 663-683]. Plaintiff's attorney later faxed the ALJ more records, including a

1       Plaintiff argues that it is "generally recognized that clinical therapists work in conjunction with the
2 psychiatric professionals" in a setting such as County Mental Health. The Commissioner's regulations do
3 not define an acceptable medical source so loosely, however. Furthermore, nothing in the record indicates
4 that Mr. Wells worked so closely with an acceptable medical source that the distinction is immaterial See
5 Gomez, 74 F.3d at 971 (holding that where the treating physician's nurse practitioner consulted with the
6 treating physician "numerous times over the course of" her treatment relationship with the claimant, "worked
7 closely under the supervision" of the treating physician, and "was acting as an agent of [the treating
8 physician] in her relationship with" the claimant, "[h]er opinion properly was considered as part of" the
9 opinion of the treating physician, an acceptable medical source).

10       For the foregoing reasons, the ALJ did not err in evaluating the evidence from Mr. Wells.

11 **Consultative psychiatric examination report**

12       Plaintiff contends that the ALJ erred in not discussing, and giving reasons for rejecting, the opinion
13 of Kurt Bickford, Ph.D., who conducted a psychological evaluation in July 2003 at the request of plaintiff's
14 vocational rehabilitation counselor. [JS 13-15].

15       The ALJ summarized the testimony of the medical expert, Dr. Landau, who in turn summarized Dr.
16 Bickford's report [AR 607-613] along with the other medical evidence in the record. [AR 211]. The ALJ
17 noted that Dr. Bickford "assessed a major depressive disorder without disability." [AR 211].

18       Dr. Bickford examined plaintiff about ten months before plaintiff's *prior* SSI application was finally
19 denied in a May 2004 hearing decision, and about a year and a half before plaintiff filed his current
20 application for SSI benefits in December 2004. The ALJ who denied plaintiff's prior application found that
21 plaintiff had severe bowel problems and depression, but that those impairments were not disabling. [See AR
22 206].

23       As explained above, plaintiff has the burden of rebutting the presumption of continuing nondisability

---

complete copy of that assessment [AR 704-708], but the ALJ's attention was not drawn either to the omission of the second page of the assessment or its subsequent transmission. Because the ALJ articulated other legally sufficient reasons for rejecting Mr. Wells's opinion, his rejection of Mr. Wells's opinion on the ground that he did not conduct a mental status examination is harmless error. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.")(citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1990)).

created by the May 2004 decision. Dr. Bickford's report predates that decision. It provides no basis for showing changed circumstances or a previously unlitigated impairment with respect to the relevant period, which began in December 2004, when plaintiff filed his current application. The ALJ did not err in failing to discuss, or give reasons for rejecting, Dr. Bickford's opinion.

**Severity determination**

Plaintiff contends that the erroneously rejected evidence from Dr. Chang, Mr. Wells, and Dr. Bickford establishes the existence of a severe, medically determinable impairment. The ALJ did not err in evaluating the evidence from those sources, and therefore this contention is without merit.

**Hypothetical question**

Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert because the hypothetical question did not include all of the limitations that plaintiff's contends were improperly rejected by the ALJ.

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

For the reasons described above, the ALJ did not commit legal error in evaluating the medical evidence, and his finding that plaintiff did not have a severe impairment or combination of impairments is supported by substantial evidence. Accordingly, the ALJ's hypothetical questions provide no basis for reversing the denial of benefits.

**Conclusion**

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: September 19, 2008

ANDREW J. WISTRICH
United States Magistrate Judge